## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01284-WJM-STV

ASHLEY GENTRY, individually and on behalf of All Others Similarly Situated,

      Plaintiff,

v.

JACOB KOSTECKI,

      Defendant.

_____

## ORDER
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on (1) Plaintiff's Motion for Class Certification and Appointment as Class Representative (the "Motion to Certify") [#29], (2) Plaintiff's Motion for Appointment of Class Counsel (the "Motion for Class Counsel") [#30], and (3) Plaintiff's Motion for Default Final Judgement (the "Motion for Default") [#31], (collectively, the "Motions").  The Motions have been referred to this Court.  [#33]  This Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that neither oral argument nor an evidentiary hearing would materially assist in the disposition of the Motions.  For the following reasons, the Motions are **DENIED WITHOUT PREJUDICE** to refiling.[1]

_____

[1] Although this Court generally must issue a recommendation rather than an order on dispositive motions, such as the Motion to Certify and the Motion for Default, the Court finds it appropriate to issue an order here, because the Court denies the Motions without prejudice to refile to correct defects in the Motions and thus the rulings on the Motions

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Defendant Jacob Kostecki, an individual domiciled in Boulder, Colorado, promoted a two-day conference entitled "Massive Adoption in Memphis:  Blockchain and Digital Assets" that was purportedly to take place on February 27-28, 2020 at the University of Memphis's FedEx Institute of Technology (the "Conference").  [#1, ¶¶ 1, 27, 31]  In addition to offering tickets and sponsorships for the Conference, Defendant also promised ticket purchasers package deals for airfare and lodging for around $300-$400, which was less than most roundtrip airfares alone at the time offered.  [*Id.* at ¶ 2]  Defendant also assured ticket purchasers that they could "cancel risk free for a full refund by January 30, 2020."  [*Id.* at ¶ 3]

On or about December 16, 2019, Plaintiff Ashley Gentry, an individual domiciled in San Dimas, California, purchased ticket packages for the Convention for herself and two other people.  [*Id.* at ¶¶ 22, 23, 24]  The packages included tickets, airfare, and lodging accommodations.  [*Id.*]  Plaintiff paid Defendant a total sum of $794.00 for the tickets and travel packages.  [*Id.* at ¶ 25]  Upon receiving the payment, Defendant confirmed in writing to Plaintiff that she could "cancel risk free for a full refund."  [*Id.* at ¶ 26]  Plaintiff estimates that approximate 2,000 other people also paid Defendant for tickets, sponsorships, and travel packages for the Conference.  [*Id.* at ¶ 38]

---

are non-dispositive.  *See Ceja v. Scribner*, No. LACV0700606VBFKES, 2016 WL 3996152, at *6 (C.D. Cal. Jan. 19, 2016) (collecting cases finding that magistrate judge did not exceed authority by denying dispositive motions without prejudice to refile).

[2] Because Defendant has defaulted, the Court accepts "as true all factual allegations in the complaint, except those pertaining to the amount of damages."  *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003); *see also Wendell H. Stone Co., Inc. v. Five Star Advert., LLC*, No. 19-CV-03157-PAB-STV, 2021 WL 1080398, at *2 (D. Colo. Mar. 17, 2021) (considering well-pleaded allegations in complaint admitted for purposes of evaluating class certification after defendant defaulted).

On January 31, 2020, Defendant cancelled the Conference, stating in a tweet on Twitter that cancellation "was the only responsible thing to do" and that he would "repay everyone." [*Id.* at ¶ 5]  Defendant contended that cancellation was necessary due to cash flow problems and lower than anticipated ticket and sponsorship sales.  [*Id.* at ¶ 6] Defendant represented that he would provide refunds "in the order [purchases] were received" and promised that the first refunds would be made "no later than February 29" but that the entire refund process would take six months.  [*Id.* at ¶ 10]  In another tweet on April 1, 2020, Defendant stated:  "I have . . . acknowledged all debts as my personal own and have declared that they will be repaid by me." [*Id.* at ¶ 11]  Later that same day, Defendant posted another tweet indicating that he would not address refunds until "post Covid 19" and requesting that people "reach out to [him] once the National and state emergencies are lifted." [*Id.* at ¶ 13]

On May 7, 2020, Plaintiff filed the instant lawsuit on behalf of the following proposed class:  "All individuals or entities who: (1) purchased tickets, sponsorships and/or travel packages from [Defendant], and (2) have been denied a refund from [Defendant] to date." [*Id.* at ¶ 44]  Plaintiff asserted claims under Colorado law for fraudulent inducement, breach of contract, conversion, and unjust enrichment. [*Id.* at ¶¶ 44, 73-90]  The Complaint seeks the following damages on behalf of the class:  (1) "restitution, including, without limitation, disgorgement of all profits and unjust enrichment that [Defendant] obtained as a result of his unlawful and unfair business practices and conduct;" (2) actual compensatory damages; (3) exemplary and punitive damages; (4) pre-judgment and post-judgment interest; and (5) expenses and the costs of this action. [*Id.* at 18-19]

On June 16, 2021, Plaintiff filed an Affidavit of Service in which a process server testified that he personally served Defendant with the summons and complaint on June 12, 2020.  [#16]  On July 6, 2020, Plaintiff filed with the Court a letter dated July 2, 2020, from Defendant addressed to the Court and counsel for Plaintiff that requested a 60-day extension of time to respond to the Complaint.  [#18-1]  The Court construed the letter as a motion for an extension of time to respond to the Complaint and granted Defendant an extension until August 6, 2020 to respond to the Complaint.  [#21]  On August 11, 2020, Plaintiff filed a proposed scheduling order in which Plaintiff represented that she had been unable to confer with Defendant as required by the Court's order prior to filing the proposed scheduling order.  [#23 at 1-2]  More specifically, counsel for Plaintiff contended that Defendant sent Plaintiff's counsel an email on July 29, 2020 stating that he would be available for a telephone call to confer on August 3, 2020, but then failed to attend that call or otherwise contact counsel for Plaintiff.  [*Id.*]  As of the filing of this Order, Defendant has not responded to the Complaint or taken any other action with the Court to defend against Plaintiff's claims.

On August 11, 2020, Plaintiff moved for entry of default against Defendant, and on August 12, 2020, the Clerk of Court entered default against Defendant.  [##25, 27]  On October 29, 2020, Plaintiff filed the Motion to Certify, Motion for Class Counsel, and Motion for Default.  [##29-31]  The Court addresses each of the Motions in turn.

## II.  MOTION TO CERTIFY

### A    Legal Standard

Federal Rule of Civil Procedure 23 sets forth the requirements for the certification of a class action.  "As the party seeking to certify a class, Plaintiff bears the strict burden

of proving the requirements of Rule 23."[3]  *Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1079-80 (D. Colo. 2016) (citing *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)).  "In determining the propriety of a class action, the question is not whether a plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Id.* at 1080 (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982)).  "When deciding whether the proposed class meets the requirements of Rule 23, the Court accepts the plaintiff's substantive allegations as true, though it need not blindly rely on conclusory allegations and may consider the legal and factual issues which the complaint presents."  *Id.* (citing *Shook v. El Paso Cty.*, 386 F.3d 963, 968 (10th Cir. 2004)).

To obtain class certification, the plaintiff must satisfy all four prerequisites of Rule 23(a).  *See Shook*, 386 F.3d at 971.  These four prerequisites are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

---

[3] "[A] clerk's entry of default does not change the analysis that a district court must undertake in deciding whether to certify a class because any other conclusion might give defendants an incentive to default in situations where class certification seems likely." *Wendell H. Stone Co., Inc.*, 2021 WL 1080398, at *2 (quotation omitted).  Moreover, even after default has been entered, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Id.* (quoting Charles Wright, Arthur Miller & Mary Kane, 10A Fed. Prac. & Proc. § 2688.1 (4th ed. 2020)).

Fed. R. Civ. P. 23(a).  "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quotation omitted).

"If Plaintiff establishes that he has met these threshold requirements, he must then demonstrate that the action falls within one of the three categories set forth in Rule 23(b)."  *Torres-Vallejo*, 220 F. Supp. 3d at 1080 (citing *Shook*, 386 F.3d at 971).  Here, Plaintiff seeks certification pursuant to Rule 23(b)(1)(A) and Rule 23(b)(3).  [#29 at 10-14] Pursuant to Rule 23(b)(1)(A), a class action may be maintained if prosecuting separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule sets forth the following matters pertinent to a Rule 23(b)(3) finding:

(1) the class members' interests in individually controlling the prosecution or defense of separate actions;

(2) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and

(4) the likely difficulties in managing a class action.

Before addressing the requirements of Rule 23, however, the Court first must consider "whether plaintiff has proposed an ascertainable class."  *Wendell H. Stone Co., Inc. v. Five Star Advert., LLC*, No. 19-CV-03157-PAB-STV, 2021 WL 1080398, at *3 (D.

Colo. Mar. 17, 2021).  "Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class."  *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012) (quotation omitted).  Thus, "before [the Court] address[es] each prerequisite of Rule 23(a), [it] must first address the adequacy of Plaintiff's proposed class."  *Id.*  "[A]lthough the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable."  *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-97 (D. Colo. 2014) (quotation omitted).  "An identifiable class exists if its members can be ascertained by reference to objective criteria."  *Id.* (quotation omitted).  "A class is sufficiently defined if it is administratively feasible for the court to determine whether a particular individual is a member."  *Edwards*, 2012 WL 4378219, at *4 (quotation omitted).

### B.    Ascertainability of the Class

As detailed above, the Court must first determine whether Plaintiff has identified a manner for members of the class to be ascertained.  "[T]o satisfy ascertainability as it relates to proof of class membership, the plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively feasible."  *Wendell H. Stone Co., Inc.*, 2021 WL 1080398, at *3 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 (3d Cir. 2013)).  Here, the Motion to Certify "does not supply any evidence of how [P]laintiff would identify the other class members given the default by [D]efendant[ ]."  *Id.*  To the contrary, Plaintiff acknowledges that "the [putative] Class members' names are not easily ascertainable" and that "Plaintiff is currently unable to obtain from [Defendant] the records memorializing the names of the would-be attendees" of the Conference.  [#29 at

7]  In the absence of such discovery from Defendant, Plaintiff has offered no proposal—such as discovery from non-parties—for how she would identify the putative class members.

Accordingly, because Plaintiff "has not supplied a reliable and administratively feasible method for ascertaining class members, . . . the Court will deny [P]laintiff's [M]otion to [C]ertify with regard to Rule 23(b)(3) without prejudice" to Plaintiff filing a renewed motion to certify—after obtaining any necessary discovery—that addresses the identification and ascertainability of the class.  *Wendell H. Stone Co., Inc.*, 2021 WL 1080398, at *3.  "Because the issue of ascertainability [may] matter[ ] less for a [Rule 23(b)(1)(A)] class, . . . the Court will consider whether the class should be certified under [Rule 23(b)(1)(A)]."[4]  *Id.*

## C.    Rule 23(b)(1)(A)

As noted above, Rule 23(b)(1)(A) authorizes a class action if prosecuting separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."   "[T]he risk of 'incompatible

---

[4] Pursuant to Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances," including notice of the right to opt-out, for classes certified pursuant to Rule 23(b)(3), but it is within the Court's discretion whether to require notice to members of a class certified pursuant to Rule 23(b)(1).  "Because individual class members must receive the best notice practicable and have an opportunity to opt out, and because individual damage claims are likely, Rule 23(b)(3) actions require a class definition that will permit identification of individual class members, while Rule 23(b)(1) or (b)(2) actions may not."  *Wendell H. Stone Co., Inc.*, 2021 WL 1080398, at *3 (quoting MANUAL FOR COMPLEX LITIGATION (Fourth), § 21.222 (2004)); *see also Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 330 (S.D. Ill. 2009) ("Classes certified under Rule 23(b)(1)(A) are generally 'mandatory' in nature:  there is no notice requirement and class members do not have an opportunity to opt out and not be bound by the eventual judgment.").

standards of conduct' against which Rule 23(b)(1)(A) was designed to protect involves situations where the non-class party does not know, because of inconsistent adjudications, whether or not it is legally permissible for it to pursue a certain course of conduct." *Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 12-00604 MMM (FFMx), 2013 WL 12119569, at *15 (C.D. Cal. Apr. 29, 2013) (quotation omitted); *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) ("The phrase 'incompatible standards of conduct' refers to the situation where different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." (quotation omitted)), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).  Put another way, "subdivision (b)(1)(A) is applicable when practical necessity forces the opposing party to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable."  Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1773 (3d ed.).  "Rule 23(b)(1)(A) certification requires more, however, than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts."  *Zinser*, 253 F.3d at 1193 (quotation omitted).

Thus, a class action is appropriate under Rule 23(b)(1)(A) "when the party is obliged by law to treat the members of the class alike, for example when the class touches upon how a utility company interacts with its customers or how the government imposes a tax."  *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011) (quotation omitted).  The Advisory Committee Notes for the 1966 Amendment that added this subsection provide the following additional examples: separate actions against a municipality to declare a bond invalid or limit it or to compel or

invalidate an assessment, individual litigations of the rights and duties of riparian owners, and multiple lawsuits to declare landowners' rights and duties respecting a claimed nuisance.    None of these examples resembles the situation here.

Nor does Plaintiff identify any "incompatible standards of conduct" that would apply to Defendant if separate actions were maintained.  Instead, Plaintiff argues only that "there are various questions of law and fact which are common to the [putative class]" and "[i]f such questions were adjudicated on individual bases, they would lead to inconsistent and/or varying adjudications."[5]  [#29 at 11]  Such a broad interpretation of Rule 23(b)(1)(A), however, would be redundant of Rule 23(a)(2)—which establishes as a prerequisite for any class action that there be "questions of law or fact common to the

---

[5] Plaintiff's reliance on *A-W Land Co. v. Anadarko E & P Co. LP*, No. 09-CV-02293-MSK-MJW, 2013 WL 3199986, at *2 (D. Colo. June 24, 2013) is misplaced.  Although the court there found certification pursuant to Rule 23(b)(1)(A) appropriate based upon four questions of law common to all class members, it did so because "[e]ach of th[o]se questions ha[d] the potential, if answered individually, to provide 'inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for [the Defendants].'" *Id.* (quoting Rule 23(b)(1)(A)).  Importantly, the putative class in *A-W Land Co.* consisted of the owners of surface estates of various parcels of property for which the defendants owned the mineral estates beneath those parcels and the lawsuit concerned the parties' respective rights pursuant to a common license agreement. *Id.* at *1.  The court thus found that inconsistent rulings in separate actions "could result in varying interpretations of the surface reservation, or even varying adjudications of the Defendants' vicarious liability or privilege, yielding a patchwork of differing legal standards applied to the Defendants' conduct." *Id.* at *2.  More specifically, the court observed that inconsistent results in separate actions may result in "the very same conduct by the Defendants . . . be[ing] privileged as to some surface estate owners and in violation of the surface reservation as to others." *Id.* Similarly, in *Ashley v. Reg'l Transp. Dist.*, also cited by Plaintiff, the putative class of beneficiaries of a pension fund brought claims against the administrators of the pension fund challenging how benefits were calculated under the plan and the court concluded that certification pursuant to Rule 23(b)(1)(A) was appropriate, because inconsistent results in separate actions  would create a "very high risk of incompatible standards of conduct for the Pension Plan." No. 05-CV-01567-WYD-BNB, 2008 WL 384576, at *5 (D. Colo. Feb. 11, 2008).  By contrast, Plaintiff here has not identified any such potential for incompatible standards of conduct for Defendant that would result from inconsistent rulings on the common issues of law present in this case.

class"—and thus render Rule 23(b)(1)(A) meaningless.[6]  As the Tenth Circuit explained, "[a] widely-recognized limitation on (b)(1)(A) certification requires that there be more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action."  *In re Integra Realty Res.*, Inc., 354 F.3d 1246, 1263-64 (10th Cir. 2004) (quotation omitted).

Moreover, Plaintiff here seeks only monetary damages on behalf of the putative class.[7]  [#1 at 18-19]  Numerous courts have held that "[c]ertification pursuant to Rule 23(b)(1)(A) is generally not appropriate in cases in which the primary relief sought is monetary damages."[8]  *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 516 (D. N.M. 2004); *see, e.g.*, *Zinser*, 253 F.3d at 1193 ("Certification under Rule 23(b)(1)(A) is . . . not appropriate in an action for damages."); *Oakley v. Verizon Commc'ns Inc.*, No. 09 CIV. 9175(CM), 2012 WL 335657, at *15 (S.D.N.Y. Feb. 1, 2012) ("Rule 23(b)(1)(A) is not intended to apply to classes seeking monetary relief" and thus "Plaintiffs cannot rely on

---

[6] Such an interpretation would also render the other provisions of Rule 23(b) unnecessary as every class action that satisfies the prerequisite required by Rule 23(a)(2) would also satisfy the requirements of Rule 23(b)(1)(A).

[7] Although the Prayer for Relief in the Complaint requests "[a] declaration. . . that this action is a proper class action, including certification of the proposed Class, appointment of Plaintiff as class representative[ ], and appointment of Plaintiff's counsel as class counsel" [#1 at 18], such relief is requested through the instant Motions and thus the request for declaratory relief would be mooted if the Motions were granted.

[8] The Court acknowledges an exception to this general rule in ERISA cases that seek monetary damages pursuant to an ERISA plan.  *See Harris v. Koenig*, 271 F.R.D. 383, 393 (D.D.C. 2010) (collecting cases).  As one district court in this Circuit explained, these ERISA decisions certified the class under Rule 23(b)(1)(A) upon "identif[ying] a specific risk of mutually conflicting obligations—the risk, for example, that one court might order the removal of plan fiduciaries while another court might permit plan fiduciaries to stay." *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593-JWL, 2011 WL 1303367, at *13 (D. Kan. Apr. 6, 2011) (declining to certify class under Rule 23(b)(1)(A) where putative class sought primarily monetary damages). This line of ERISA cases thus would not appear to have any applicability here.

Rule 23(b)(1)(A) to obtain certification of any damages class.").  As the Eleventh Circuit explained, "[b]ecause the risk that judicial action will create incompatible standards of conduct is low when a party seeks compensatory damages, only actions seeking declaratory or injunctive relief can be certified under Rule 23(b)(1)(A)."  *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009) (finding that district court properly denied certification under Rule 23(b)(1)(A), because "the primary remedy sought . . . [was] unquestionably monetary" even though limited injunctive relief was also requested); *see also Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986) ("The danger of imposing 'incompatible standards of conduct' on the party opposing the class is . . . not normally posed by a request for money damages.").  Instead, "[w]hen substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out."  *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999); *see also Dukes*, 564 U.S. at 362 (finding that "individualized monetary claims belong in Rule 23(b)(3)"); *Harrington*, 222 F.R.D. at 516 ("Where monetary damages are the predominate remedy sought, certification is usually only appropriate pursuant to Fed. R. Civ. P. 23(b)(3).").

Plaintiff has made no attempt to address this authority finding that certification pursuant to Rule 23(b)(1)(A) is inappropriate in actions seeking primarily monetary damages.  "Even assuming that certification might . . . be appropriate in a case where, as here, the plaintiffs seek primarily monetary damages, [P]laintiff[ ] ha[s] nonetheless not shown that certification would be appropriate here," because Plaintiff "ha[s] not identified, either in [her] complaint or in [her other] submissions, any specific relief that [she is] requesting that might expose [D]efendant[ ] to mutually conflicting obligations."  *In re YRC*

*Worldwide, Inc. ERISA Litig.*, No. 09-2593-JWL, 2011 WL 1303367, at *13 (D. Kan. Apr. 6, 2011). Accordingly, Plaintiff's Motion to Certify pursuant to Rule 23(b)(1)(A) is denied without prejudice to Plaintiff filing a renewed motion to certify that identifies "incompatible standards of conduct" that separate actions may create for Defendant and addresses the availability of a Rule 23(b)(1)(A) class where, as here, the putative class seeks only monetary damages.

### D.   Class Notice

The Court further observes that the Motion to Certify is silent as to whether putative class members should be notified and, if so, in what manner. Pursuant to Rule 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Such notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

For classes certified pursuant to Rule 23(b)(1), Rule 23 provides the Court with discretion with regard to whether notice should be provided to the class. Fed. R. Civ. P. 23(c)(2)(A). The Court, however, must exercise that discretion consistent with putative class members' constitutional due process rights. Thus, although Rule 23 provides the Court with discretion, "courts have expressed concerns regarding the constitutionality of

not providing notice to [putative class members for] class actions for *monetary relief*." *Skinner v. Uphoff*, 175 F. App'x 255, 258 n.1 (10th Cir. 2006) (emphasis in original); *see also Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 658 (6th Cir.2006) (Keith, J., dissenting); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416-17 (5th Cir.2004) ("Though rule 23 does not explicitly extend these safeguards to rule 23(b)(2) classes, due process requires the provision of notice where a rule 23(b)(2) class seeks monetary damages."). Indeed, "[i]n the context of a class action predominantly for money damages[,]" the Supreme Court has held "that absence of notice and opt out violates due process." *Dukes*, 564 U.S. at 363 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

The Court thus also finds the Motion to Certify deficient, because it completely fails to address Rule 23 and due process notification requirements.

### E.      Conclusion

For the foregoing reasons, Plaintiff's Motion to Certify is DENIED WITHOUT PREJUDICE to Plaintiff filing a renewed motion for class certification that addresses the deficiencies identified herein.  Because no class has yet been certified and the propriety of certifying a class is not yet clear, Plaintiff's request in the Motion to Certify to be appointed a class representative is premature and thus also is DENIED WITHOUT PREJUDICE.

### III.    MOTION FOR CLASS COUNSEL

The Motion for Class Counsel seeks an order appointing Plaintiff's counsel, Silver Miller, as counsel for the class.  [#30 at 5]  Pursuant to Rule 23(g)(1), "a court that certifies a class must appoint class counsel."  Because, for the reasons explained above, the Court finds that the Motion to Certify is deficient and thus no class will be certified at this time,

the Court finds that the Motion for Class Counsel should be denied without prejudice as premature.  *See, e.g.*, *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 17-80495-CIV, 2018 WL 4922460, at *1 n.1 (S.D. Fla. Mar. 28, 2018) (finding request to appoint class counsel premature where "Court ha[d] not certified a class"); *Rivet v. Off. Depot, Inc.*, 207 F. Supp. 3d 417, 432 (D.N.J. 2016) (appointing class counsel for certified classes but denying request without prejudice as premature with regard to class that had not yet been certified).

Pursuant to Rule 23(g)(3), the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Plaintiff, however, has not requested the Court to designate interim class counsel.  [#30]  Regardless, the Court does not find it appropriate or necessary to appoint interim class counsel at this time.  First, for the reasons explained above, Plaintiff's "case[ ] may not be suitable for a class action."  *Cook v. AT&T Mobility, LLC*, No. CV10-8870 R (OPx), 2011 WL 13217794, at *1 (C.D. Cal. Jan. 7, 2011) (finding motion for appointment of interim class counsel premature).  Second, Plaintiff "ha[s] not demonstrated that there are any overlapping, duplicative, or competing suits in which a number of lawyers may compete for class counsel appointment."  *Id.* (citing MANUEL FOR COMPLEX LITIGATION, § 21.11 (4th ed. 2004)); *see also Glen Ridge SurgiCenter, LLC v. Horizon Blue Cross & Blue Shield of N.J.*, No. 08-6160 (JLL), 2011 WL 5881924, at *7 (D.N.J. Sept. 16, 2011) (denying motion for appointment of interim class counsel where "no other similar class actions [were] pending" and thus there was "no danger of any rivalry or confusion that may make appointment of interim counsel appropriate in other class actions").

Accordingly, the Motion for Class Counsel is DENIED WITHOUT PREJUDICE to filing a renewed motion to appoint class counsel with any renewed motion for class certification.

## IV.    MOTION FOR DEFAULT

Plaintiff's Motion for Default seeks the entry of default judgment against Defendant and in favor of all members of the putative class.  [#31 at 11]  Because no class has yet been certified, Plaintiff's Motion for Default is denied without prejudice as premature.  The Court further finds that the denial without prejudice of Plaintiff's Motion for Default is appropriate due to deficiencies in the Motion for Default.

First, the Motion for Default fails to propose a basis for determining the amount of the putative class members' damages or to offer any evidence in support of such damages.  [*Id.* at 10]  Instead, Plaintiff states only that "[b]ecause the documentation memorializing the identities of, and outstanding amounts yet to be refunded to, members of the [putative] Class resides solely with Defendant," the Court should "hold a hearing to address the proper measure of damages to be assessed."  [*Id.*]  Although the Court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages," Fed. R. Civ. P. 55(b)(2)(B), Plaintiff fails to identify any basis for the Court to determine the amount of damages at such a hearing or to identify any evidence available to be presented at the hearing.  "Although this matter is presented to the court on default, plaintiffs retain the burden to prove the amount of damages to which they are entitled."  *Bennett v. Luigi's Italian Rest.*, No. 18-1295-JTM, 2020 WL 1503472, at *4 (D. Kan. Mar. 30, 2020); *see also Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003) (instructing that, upon default, the court accepts "as true all factual allegations in the

complaint, except those pertaining to the amount of damages"). Although a hearing may ultimately be necessary for the Court to determine the appropriate amount of damages, any renewed motion for default judgment should at least propose a basis for the Court to determine the amount of damages and identify the evidence available to be presented at such a hearing.

Second, the Motion for Default fails to address the propriety of the Court entering default judgment on behalf of a class before a class has been certified and putative class members have received notice and had an opportunity to opt out. *See, e.g.*, *Partington v. Am Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 340 (4th Cir.2006) (holding that class members could not use a default judgment to establish class members as judgment creditors when the district court granted default judgment in favor of class but never explicitly certified a class); *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003) (holding that the district court improperly awarded class damages when no class had been certified). To the extent Plaintiff files a renewed motion to certify a class and simultaneously seeks default judgment, she shall address in the motion for default judgment the proprietary of entering default judgment before the putative class has received notice and an opportunity to opt out. *See Heinz v. Dubell Lumber Co.*, No. CV 19-8778 (RBK/KMW), 2020 WL 6938351, at *8 (D.N.J. Nov. 25, 2020) (denying without prejudice motion for default judgment, because "Plaintiff has not sent notice to the proposed class members, and therefore by entering a default judgment, this Court would be binding persons whose rights are at issue without first giving them proper notice.").

Accordingly, the Motion for Default is DENIED WIHTOUT PREJUDICE to Plaintiff filing a renewed motion for default judgment that either seeks default judgment only on

behalf of the named plaintiff or seeks default on behalf of a class and addresses the deficiencies identified in this Order.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification and Appointment as Class Representative [#29], Plaintiff's Motion for Appointment of Class Counsel [#30], and (3) Plaintiff's Motion for Default Final Judgement [#31] are all **DENIED WITHOUT PREDICE** to Plaintiff filing revised Motions that address the deficiencies identified in this Order.  On or before **May 17, 2021**, Plaintiff shall do one of the following: (1) file a renewed motion for class certification consistent with this Order (or a motion for an extension of time in which to do so) or (2) file a motion for default judgment on behalf of the named Plaintiff only.

DATED:  April 14, 2021                                     BY THE COURT:


                                                            s/Scott T. Varholak
                                                           United States Magistrate Judge